DATE 5/17/2018

**NOTICE OF APPEALS**
**ASSIGNMENT OF COURT THE COURT OF APPEALS**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
5/17/2018 7:37:16 PM
CHRISTOPHER A. PRINE
Clerk

**TO:** 14TH COURT OF APPEALS

**From:** Deputy Clerk: SHEMEKA LEE
Chris Daniel, District Clerk
Harris County, T E X A S

**CAUSE:** 2017-31314

**VOLUME** _____ **PAGE** _____ **OR** **IMAGE #** 78518014

**DUE** 6/7/2018 **ATTORNEY** 05836400

**NOTICE OF APPEAL HAS BEEN ASSIGNED TO THE 14TH COURT OF APPEALS**

**DATE JUDGMENT SIGNED:** 2/7/2018

**MOTION FOR NEW TRIAL DATE FILED** 3/9/2018

**FINDINGS OF FACT & CONCLUSIONS OF LAW FILED** NONE

**REQUEST TRANSCRIPT DATE FILED** NONE

**NOTICE OF APPEAL DATE FILED** 5/16/2018

**NUMBER OF DAYS: ( CLERKS RECORD )** 120

**FILE ORDERED:** YES ☐ NO ☐ **IMAGED FILED:** YES ☐ NO ☐

**CODES FOR NOTICE OF APPEAL:** BC, C, OA

**COURT REPORTER:** Sheri Ullrich

CHRIS DANIEL
Harris County, District Clerk

By: /s/ *Shemeka Lee*
**SHEMEKA LEE, Deputy**

| | |
|---|---|
| BC | NOTICE OF APPEAL FILED |
| BG | NOTICE OF APPEAL FILED – GOVERNMENT |
| C | JUDGMENT BEING APPEALED |
| D | ACCELERATED APPEAL |
| OA | NO CLERK'S RECORD REQUEST FILED |
| O | CLERK'S RECORD REQUEST FILED (W/ NOTICE OF APPEAL) |
| NA | AMENDED NOTICE OF APPEAL |

## NO. 2017-31314

| | | |
|---|---|---|
| **JOHN WILDER** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| | § | |
| **BLACK PEARL EXPLORATION,** | § | |
| **LLC** | § | **157TH JUDICIAL DISTRICT** |

## DEFENDANT'S NOTICE OF APPEAL

Defendant Black Pearl Exploration, LLC files this notice of appeal and states the following:

1.  This is an appeal from the Final Judgment signed by the Court in this matter on February 7, 2018.

2.  This is an appeal to either the First or Fourteenth Court of Appeals.

Respectfully submitted,

**DICKINSON & WHEELOCK, P.C.**

By: /s/ *Thomas A. Dickinson*
      Thomas A. Dickinson
      Texas Bar No. 05836400
      tom@dwlegal.com
      Gregory P. Propes
      gpropes@dwlegal.com
      Texas Bar No. 24002794
      7660 Woodway Drive, Suite 460
      Houston, Texas 77063
      (713) 722-8118 – Telephone
      (713) 722-7003 – Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was sent to the following via e-service and e-mail on this the 16th day of May, 2018.

      Clay Crawford
      Sears Crawford, LLP
      1200 Rothwell Street
      Houston, Texas 77002
      clay@searscrawford.com

      /s/ *Thomas A. Dickinson*
      Thomas A. Dickinson

1/10/2018 2:46:38 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 21740226
By: JEFFERSON, TIFFANY S
Filed: 1/10/2018 2:46:38 PM

CAUSE NO. 2017-31314

| | | |
|---|---|---|
| JOHN WILDER | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| BLACK PEARL EXPLORATION, L.L.C. | § | 157th JUDICIAL DISTRICT |

## FINAL JUDGMENT

Pending before the Court is Plaintiff John Wilder's First Amended Motion for Summary Judgment against Defendant Black Pearl Exploration, L.L.C. The Court determined that it has jurisdiction over the subject matter and the parties to this proceeding. The Court has considered the pleadings on file, John Wilder's Motion for Summary Judgment, Black Pearl Exploration, L.L.C.'s response, and the arguments of counsel, if any. The Court has determined that all legal and factual prerequisites for the entry of a final judgment against Defendant Black Pearl Exploration, L.L.C. have been met. The Court grants John Wilder's Motion for Summary Judgment and enters this Final Judgment in favor of Plaintiff John Wilder.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

John Wilder shall have and recover damages from Black Pearl Exploration, L.L.C. in the amount of $557,000.

John Wilder shall have and recover attorney's fees from Black Pearl Exploration, L.L.C. in the amount of $8,800, and $3,000.00 for an appeal to the Court of Appeals, and $5,000.00 for an appeal to the Supreme Court.

John Wilder shall have and recover pre-judgment interest from Black Pearl Exploration, L.L.C. in the amount of $24,493.82.

John Wilder shall have and recover all taxable court costs from Black Pearl Exploration, L.L.C.

The amounts owed in this Final Judgment shall bear post-judgment interest at 8% on all amounts until paid.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging



Let execution and all writs and processes necessary to enforce this judgment issue.

This is a final judgment disposing of all parties and all issues. All relief not granted herein is expressly denied.

SIGNED this __7th__ day of ___Feb___, 2018.

HONORABLE RANDY WILSON
PRESIDING JUDGE

APPROVED AND ENTRY REQUESTED:

SEARS CRAWFORD, L.L.P.

__/s/ Clay Crawford__
James.C. (Clay) Crawford
SBN: 05022500
1200 Rothwell Street
Houston, Texas 77002.
PH:    (713) 223-3333
FAX:  (713) 223-3331
clay@searscrawford.com

ATTORNEY FOR PLAINTIFF

NO. 2017-31314

| | | |
|---|---|---|
| JOHN WILDER | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| BLACK PEARL EXPLORATION, LLC | § | 157TH JUDICIAL DISTRICT |

**DEFENDANTS' MOTION FOR NEW TRIAL**

Defendant Black Pearl Exploration, LLC ("Black Pearl") files this Motion for New Trial, and in support thereof would respectfully show this Court as follows:

**I.**
**Summary of Argument**

This Court committed reversible error – at least on this record – in granting summary judgment in favor of Plaintiff John Wilder ("Wilder").

The entry of this judgment is the effective equivalent of Wilder winning the lottery. Wilder agreed to take $575,000 in exchange for his 25% membership interest in Black Pearl. Wilder never tendered his membership interest, yet obtained a judgment for what he claims was the unpaid balance. That's like entering into a contract to sell one's house, accepting the funds and then keeping the keys and not moving. Texas law does not permit that result.

Moreover, there is a fact issue on whether the contract fails for illegality, because it is a fraudulent transfer. More specifically, Defendant's competent summary judgment evidence indicates that Black Pearl did not receive reasonably equivalent value for the membership interest, which Black Pearl agreed to sell at a time when it was insolvent. More importantly, Wilder was and is a Black Pearl insider, with full knowledge that Black Pearl was insolvent at the time the underlying agreement was executed.

Finally, there is a fact issue regarding the amount that John Wilder was due, as established by the affidavit filed with Defendant's response, and noted in Defendant's motion.

Black Pearl will again repeat the truth. Wilder knew that Black Pearl did not have the funds to pay him at the time the agreement was made, and would never have the funds to pay him unless Black Pearl sold a deal to generate cash. Wilder knows that Black Pearl has been unsuccessful in its efforts to date, and there is no money to pay him.

## II.
## Defendant's Evidence

For this Motion, Black Pearl relies in part upon the Amended Affidavit of R. Michael Looney (the "Looney Affidavit"), which was attached to Black Pearl's response to the motion for summary judgment, and is incorporated by reference as if set out in full.

## III.
## Wilder Cannot Keep His Membership Interest and Demand Full Payment

In short, Wilder is suing for the full amount he claims to be owed under the agreement, yet he has not assigned or transferred the subject membership interest back to Black Pearl. Wilder cannot keep the membership interest AND demand full payment. That is enough as a matter of common sense and Texas law, but the agreement actually affirmatively prohibits the result that Wilder seeks.

On April 4, 2016, Black Pearl and Wilder entered into an agreement under which Wilder would sell his 25% ownership interest back to Black Pearl (the "Purchase Agreement"). Looney Affidavit, at ¶4. A true and correct copy of the April 4, 2016 Agreement is attached hereto as Exhibit A-1. *Id.* The Purchase Agreement had a specific structure. Black Pearl was required to make two payments, in May 2016 and July 2016, totaling $75,000. Once Wilder received the $75,000, he was to give Black Pearl a full and final release.

More importantly, "immediately upon payment of the full $75,000 called for ... above," Wilder was to "convey, transfer and assign his Black Pearl ownership interests to Black Pearl Exploration, LLC (the "Transfer")...." Then, a year later, in July 2017, Black Pearl would pay Wilder $500,000.

It is undisputed that Wilder was not paid the full $75,000 in May and July 2016. Looney Affidavit, at ¶5. He however was paid more than the $17,500 alleged by Wilder. *Id.*

However, Wilder never assigned his membership interest back to Black Pearl. Looney Affidavit, at ¶6. It is notable that Wilder's affidavit is silent regarding this issue. And the Looney Affidavit makes clear that no assignment of the membership interest appears of record in the books and records of Black Pearl. *Id.* Wilder is a 25% owner in Black Pearl today. *Id.*

So Wilder is demanding payment of all amounts allegedly owed under the Purchase Agreement, while continuing to maintain ownership of the asset that he was being paid for. That cannot be the correct result, simply as a matter of common sense. In legal terms, Wilder is entitled to sue for the benefit of his bargain, but he is only entitled to be placed in the same economic position he could have occupied if the contract had been performed. *See Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex. App—Dallas 2012, no pet.). Conversely, Wilder cannot be placed in a better position, i.e., to keep the asset and to receive full payment therefor.

Moreover, the Purchase Agreement prohibits this result. Return to the text of the Purchase Agreement. As noted above, Wilder had the obligation to transfer the membership interest upon payment of the $75,000. The paragraph goes on to state:

> Then, in the event Black Pearl does not pay the full remaining $500,000 amount called for ... above, then Wilder shall have the right to **either**: (i) immediately rescind the Black Pearl interest Transfer and recover his interest in Black Pearl **or** (ii) sue to recover the full remaining amount owed under this agreement. **If Wilder elects to reclaim his interest upon non-payment, the parties agree that**

**Wilder shall relinquish his right to any remaining balance owed under this Agreement.**

(Emphasis added).

In other words, the Purchase Agreement expressly contemplated that Wilder would have a choice in the event that the $500,000 payment was not made. Wilder could sue on the unpaid balance OR Wilder could keep the membership interest and waive his right to the $500,000 payment. He did not have the option to do both – keep the interest AND sue for the $500,000.

And yet that is exactly what Wilder is doing here. He has kept the membership interest, and he has demanded payment of the $500,000. The Purchase Agreement expressly prohibits what Wilder is attempting to do.

It seems to Black Pearl that Wilder is trying to jump several steps ahead in the process contemplated by this Agreement. Since he still owns the membership interest, Wilder's only real right is to sue Black Pearl for the unpaid portion of the $75,000. Upon payment, that would trigger Wilder's obligation to transfer the membership interest. In turn, the transfer of the membership interest would trigger Black Pearl's obligation to pay the remaining $500,000, which would then give Wilder the option to sue on the $500,000 or to reclaim his membership interest.

In any event, the punch line is that Wilder cannot keep the membership interest AND demand payment of all amounts owed under the Purchase Agreement. Summary judgment on this record is therefore inappropriate.

## IV.
### The Purchase Agreement is a Fraudulent Transfer, And Is Unenforceable for Illegality

Second, the Purchase Agreement is the very definition of a fraudulent transfer under well-settled Texas law. It is, also under well-settled Texas law, unenforceable for illegality.

## A. Illegal Contracts are Unenforceable

The validity of a contract is generally a question of law. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 678 (Tex. App.—Houston [1st Dist.] 1996, no writ). An illegal contract is one in which one of the parties undertook to do an act that is forbidden by law in the place where the act is to occur. *Franklin v. Jackson*, 847 S.W.2d 306, 309 (Tex. App.—El Paso 1992, writ denied). A contract to do a thing which cannot be performed without a violation of the law is void. *Id.* Because the contract violates the law, it imposes no legal obligation on the parties. *Miller v. Long-Bell Lumber Co.*, 148 Tex. 160, 222 S.W.2d 244, 246 (Tex.1949); *Franklin*, 847 S.W.2d at 309.

However, a contract which could have been performed in a legal manner will not be declared void simply because it may have been performed in an illegal manner. *Franklin*, 847 S.W.2d at 309, *citing Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 148-49 (1947); *Wade v. Jones*, 526 S.W.2d 160, 162-63 (Tex. Civ. App.—Dallas 1975, no writ). The law presumes that contracts are legal, and the burden to prove illegality is on the party asserting it. *See Franklin*, 847 S.W.2d at 310. Unless the face of the contract shows it is illegal, the party asserting illegality must present evidence demonstrating the illegality before a court may declare the contract void. *See Lewis*, 199 S.W.2d at 149; *Franklin*, 847 S.W.2d at 310.

## B. The Purchase Agreement Represents a Fraudulent Transfer, and Is Therefore Illegal

Here, the Purchase Agreement represents a fraudulent transfer under the plain language of two different sections of the Texas Uniform Fraudulent Transfer Act, and therefore fails for illegality.

### 1. Transfer for Less Than Reasonably Equivalent Value

Tex. Bus. & Comm. Code § 24.006(a) provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Regarding solvency, Tex. Bus. & Comm. Code § 24.003(b) states: "[a]A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent."

Finally, Tex. Bus. & Comm. Code § 24.004(d) defines "reasonably equivalent value" to "include[] without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction."

So the upshot of this statutory language is that the transfer contemplated by the Purchase Agreement is fraudulent if (i) Black Pearl did not receive reasonably equivalent value for the $575,000 Wilder is demanding under the Purchase Agreement and (ii) Black Pearl was insolvent at the time of the Purchase Agreement's execution.

Black Pearl would not receive reasonably equivalent value for the transfer of the $575,000 demanded by Wilder. In light of the current state of the oil and gas business, the amount of debt owed by Black Pearl to third parties, and the lack of value of Black Pearl's assets, it would be impossible to value a 25% interest in Black Pearl on the open market for anything close to $575,000. Looney Affidavit, at ¶7.

It is true that Black Pearl is a partial owner in three separate companies that own licenses to seismic data: Black Pearl Seismic, LLC, Vetra BPX Southeast, LLC, and Cymraec Louisiana, LLC. Looney Affidavit, at ¶8. However, Black Pearl is expressly or effectively unable to transfer its ownership interest in those entities, due to the restrictive nature of the underlying licenses. *Id.* Black Pearl owns the intellectual property behind a number of oil and gas

prospects, but the intellectual property has little value in the absence of any semblance of a drilling program or funding to take leases and develop those prospects. *Id.*

Based on Mr. Looney's decades of experience in the oil and gas exploration and production industry, a 25% ownership interest in Black Pearl would not be salable in an arms-length transaction for anything close to $575,000. Looney Affidavit, at ¶9. That ownership interest could only be sold, if at all, for an amount far less than $575,000. *Id.*

Moreover, as of April 4, 2016, Black Pearl was unable to pay its debts as they became due. Looney Affidavit, at ¶10. As of March 31, 2016, Black Pearl had more than $1,000,000 in debts due to third parties, and insufficient income to pay any of those debts. *Id.* As of March 24, 2016, Black Pearl had only $2,134.74 in the Black Pearl operating account, and as of April 1, 2016, Black Pearl had only $3,134.74 in the Black Pearl operating account. *Id.*

As a result, the transfer contemplated by the Purchase Agreement was not for reasonably equivalent value, and the Purchase Agreement was entered at a time when Black Pearl was insolvent. Moreover, Wilder was fully aware of this state of affairs, as will be discussed below. Therefore, the Purchase Agreement constitutes a fraudulent transfer, and fails for illegality.

2.      **Transfer to Insider**

Tex. Bus. & Comm. Code § 24.006(b) provides:

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Tex. Bus. & Comm. Code § 24.002(7) sets forth a non-exclusive definition of "insider," stating that the definition "includes… if the debtor is a corporation: a director of the debtor … [or] an officer of the debtor." Tex. Bus. & Comm. Code § 24.002(7)(B).

The definition of "insider" does not specifically define the scenario where the debtor is a limited liability company like Black Pearl, but the concept is presumably the same.

Moreover, the list of "insiders" is not exclusive. *Matter of Holloway*, 955 F.2d 1008, 1010 (5th Cir. 1992); *Putman Pension Plan v. Stephenson*, 805 S.W.2d 16, 18 (Tex. App.— Dallas 1991, no writ). Factors which indicate that the transaction was not conducted at arm's length are relevant to determining whether the transferee was an insider. *Matter of Holloway*, 955 F.2d at 1010.

By any definition, Wilder was an insider of Black Pearl. Wilder is a 25% owner of Black Pearl, and a manager of Black Pearl. Looney Affidavit, at ¶11. Black Pearl is a closely-held entity – the four owners of Black Pearl were the same four people who were responsible for the operation of the business. *Id.* While Looney was largely in charge of the day-to-day operations of the entity, Wilder was aware of and generally participated in those day-to-day operations. *Id.* Therefore, Wilder was an "insider."

The transaction was to satisfy an alleged antecedent debt owed to Wilder. Black Pearl was a party to the sale of oil and gas interests in Montana in a transaction that closed in 2012. Looney Affidavit, at ¶12. While Black Pearl received funds at closing, those funds were immediately used to pay debts owed to creditors. *Id.*

Nevertheless, Wilder believed that he was entitled to payment of some of the proceeds of the Montana transaction. Looney Affidavit, at ¶13. He believed that Black Pearl owed him money, although Black Pearl owed him nothing. *Id.* Wilder was unhappy and discontented at that state of affairs, and continued to press for payment. *Id.*

As noted above, Black Pearl was insolvent as of April 4, 2016.

Finally, as an insider Wilder was aware that Black Pearl was insolvent both before and as of April 4, 2016. Wilder was aware of the financial standing of Black Pearl, including its inability to pay its debts as they came due, both before and as of April 4, 2016. Looney Affidavit, at ¶14. Wilder was aware that Black Pearl was heavily indebted to third party creditors without the present means to pay them, both before and as of April 4, 2016. *Id.* Wilder was aware that Black Pearl would not be able to pay any of its creditors, or Wilder under the Purchase Agreement, unless Black Pearl sold oil and gas prospects or other assets to generate sufficient cash flow. *Id.*

As a result, the transfer contemplated by the Purchase Agreement was to an insider for an antecedent debt, and the Purchase Agreement was entered at a time when Black Pearl was insolvent. The insider Wilder was fully aware of this state of affairs. Therefore, the Purchase Agreement constitutes a fraudulent transfer, and fails for illegality.

### V.
### A Fact Issue Exists on the Amount Allegedly Owed to Wilder

As noted above, the total consideration to be paid Wilder was $575,000. Wilder claimed that he had been paid $17,500. After applying that offset, Wilder requested judgment in the principal amount of $557,000. This Court entered judgment for that principal amount.

However, as noted in both the Looney Affidavit and Defendants' response, Wilder was paid more than $17,500. Looney Affidavit, at ¶5; Response, p. 4. As a result, there is competent summary judgment evidence that creates a fact issue regarding the amount of money that Wilder was paid, and therefore a fact issue regarding the amount of damages to which Wilder is allegedly entitled. Summary judgment is simply improper on this record.

## VI.
## Conclusion and Prayer

Defendant Black Pearl Exploration, LLC respectfully suggests that this Court reversibly erred in granting summary judgment to Plaintiff John Wilder. Therefore, Defendant Black Pearl Exploration, LLC respectfully requests that this Court grant this Motion for New Trial, vacate its order granting Plaintiff John Wilder's First Amended Motion for Summary Judgment, and grant such other and further relief to which it may be entitled.

Respectfully submitted,

**DICKINSON & WHEELOCK, P.C.**

By:/s/ *Thomas A. Dickinson*
Thomas A. Dickinson
State Bar No. 05836400
tdickinson@dwlegal.com
Gregory P. Propes
State Bar No. 24002794
gpropes@dwlegal.com
7660 Woodway Drive, Suite 460
Houston, Texas 77063
(713) 722-8118
(713) 722-7003 – Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2018, a true and correct copy of the foregoing instrument was forwarded to opposing counsel via e-mail and/or e-service.

Clay Crawford
Sears Crawford, LLP
1200 Rothwell Street
Houston, Texas 77002
clay@searscrawford.com

/s/ *Thomas A. Dickinson*
Thomas A. Dickinson

(3) CONNECTION(S) FOUND.

| | | | | | | |
|---|---|---|---|---|---|---|
| CASE NUM: | 201731314 | PJN: | | TRANS NUM: | | CURRENT COURT: 157 PUB: Please Select |

| | | | |
|---|---|---|---|
| CASE TYPE: | DEBT/CONTRACT - DEBT/CONTRACT | CASE STATUS: | DISPOSED (FINAL) |
| STYLE: | WILDER, JOHN | VS | BLACK PEARL EXPLORATION LLC |

**** INACTIVE PARTIES ****

| | PJN | PER/CONN | COC | BAR | PERSON NAME | PTY STAT | ASSOC ATTY |
|---|---|---|---|---|---|---|---|
| ☐ | | 00003 - 0001 | AGT | | BLACK PEARL EXPLORATION LLC (LIMITED LIABILI | | |
| ☐ | | 00002 - 0001 | DEF | 05836400 | BLACK PEARL EXPLORATION LLC | | DICKINSON, THOMAS A. |
| ☐ | | 00001 - 0001 | PLT | 05022500 | WILDER, JOHN | | CRAWFORD, JAMES CLAIBORNE |